USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/18/17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CURRY WINKFIELD,

Petitioner,

-against-

SUPERINTENDENT WILLIAM A. LEE,

Respondent.

14-CV-1329 (GBD) (BCM)

**REPORT AND RECOMMENDATION TO THE HON. GEORGE B. DANIELS**

**BARBARA MOSES, United States Magistrate Judge.**

Petitioner Curry Winkfield was convicted of criminal possession of a weapon in the second degree and reckless endangerment in the first degree in New York Supreme Court on May 28, 2009, and sentenced to an aggregate term of imprisonment of eight years. On February 20, 2014, he filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Dkt. No. 1), asserting that his conviction was against the weight of the evidence and that the trial judge had improperly admitted evidence. Petitioner was then in the custody of the New York State Department of Corrections (DOC) and incarcerated at Green Haven Correctional Facility (GHCF) in Stormville, New York. According to public records, petitioner was released on parole on May 22, 2015. Since then, petitioner has not provided the Court with any updated contact information, nor otherwise participated in this action. For the reasons set forth below, I recommend that his petition be DENIED.

## BACKGROUND

On May 28, 2009, following a jury trial in New York Supreme Court, New York County, petitioner was convicted of criminal possession of a weapon in the second degree and reckless endangerment in the first degree, both arising from a shooting incident on July 20, 2008. *See* State Court Record (Dkt. Nos. 11-1 to 11-3, hereinafter SR), at 3, 4, 14; *People v. Winkfield*, 98

A.D.3d 923 (1st Dep't Sept. 27, 2012), *lv. denied*, 20 N.Y.3d 1066 (Feb. 25, 2013). On June 15, 2009, petitioner was sentenced as a second felony offender to an aggregate term of eight years. App. Br. dated January, 2012 (SR 30-85), at 59; *Winkfield*, 98 A.D.3d 923. Notice of appeal was timely filed on June 17, 2009. App. Br. at 36.

On his direct appeal to the Appellate Division, First Department, petitioner argued, through counsel, that: (1) the verdict was against the weight of the evidence; and (2) his "due process right to a fair trial" under the Sixth and Fourteenth Amendments and the New York State Constitution was violated when the trial judge wrongfully admitted the testimony of petitioner's ex-girlfriend, Shanice Richardson, that she had seen petitioner in possession of a gun similar to the one used in the July 20, 2008 shooting incident several times in the months preceding that incident. That ruling, petitioner argued, violated *People v. Molineux*, 168 N.Y. 264, 61 N.E. 286 (1901). App. Br. at 59-81.[1]

---

[1] "[T]he familiar *Molineux* rule states that evidence of a defendant's uncharged crimes or prior misconduct is not admissible if it cannot logically be connected to some specific material issue in the case, and tends only to demonstrate the defendant's propensity to commit the crime charged." *People v. Frumusa*, 29 N.Y. 3d 364, 369, 57 N.Y.S.3d 103 (2017) (internal citation and quotations omitted) (emphasis in original). Before Winkfield's trial, the government made an application under *Molineux* to introduce Ms. Richardson's testimony on the ground that it was relevant to the issue of identity. May 15, 2009 Hrg. Tr. (Dkt. No. 11-4), at 82:12-87:11; 101:15-103:1. Petitioner opposed the request, arguing that the testimony was unreliable, highly prejudicial and not probative. *Id.* at 87:12-89:9. The trial judge initially denied the application on the ground that, given the expected testimony of two auxiliary police officers who witnessed the shooting and would identify petitioner as the shooter, Ms. Richardson's evidence "would be tantamount to bolstering," but directed counsel to renew their pre-trial applications, including the *Molineux* application, during trial if they believed the relevant facts had changed. *Id.* 105:23-108:23. Partway through trial, the prosecutor renewed his *Molineux* application, arguing that the identity of the shooter was the sole issue in the case and had been not conclusively established. *See* May 21, 2009 Hrg. Tr. (Dkt. No. 11-8), at 362:3-370:17. The court then reversed its initial *Molineux* ruling and permitted Ms. Richardson to testify. *See* App Br. at 53-54; Resp. Br. dated August, 2012 (SR 86-133), at 119-124.

The First Department unanimously affirmed the judgment on the merits on September 27, 2012. *Winkfield*, 98 A.D.3d at 923. The court found that the verdict "was not against the weight of the evidence" and that there was "no basis" for "disturbing the jury's determinations" concerning the identification of petitioner as the shooter in the July 20, 2008 incident. *Id.* The First Department also found that Ms. Richardson's testimony was "relevant to establish identity," and that its probative value "outweighed any prejudicial effect, which the [trial] court minimized by way of thorough instructions," concluding that the trial court "properly exercised its discretion" in its *Molineux* ruling admitting Ms. Richardson's testimony. *Id.*

By letter dated October 10, 2012, petitioner applied, through counsel, for leave to appeal to the New York Court of Appeals, raising both arguments presented to the Appellate Division. *See* SR 137 ("We request this Court to consider and review all issues outlined in [the brief filed in the Appellate Division].") The government opposed the request on the grounds that petitioner's appellate claims were "meritless," and that his weight-of-the-evidence claim was a "question of fact" that the New York Court of Appeals did not have jurisdiction to review. SR 138-39 (citing New York Crim. Proc. L. §§ 470.15(5), 470.35(1)).[2]

---

[2] While the intermediate appellate courts in New York are "empowered to review questions of law and questions of fact," the New York Court of Appeals, "with few exceptions [including for capital cases], passes on only questions of law." *People v. Bleakley*, 69 N.Y.2d 490, 493-94, 515 N.Y.S.2d 761 (1987) (holding that the Appellate Division committed reversible error when it "avoid[ed] its exclusive statutory authority to review the weight of the evidence in criminal cases"). *See also* New York Crim. Proc. L. § 470.35 (limiting the scope of review on appeals from orders of intermediate appellate courts to the Court of Appeals to "questions of law"); *People v. Danielson*, 9 N.Y.3d 342, 349 (2007) ("In noncapital cases, this Court is without authority to review the Appellate Division's weight of the evidence determination."). "The kinds of determinations of reversal or modification deemed to be on the facts include, but are not limited to, a determination that a verdict of conviction resulting in a judgment was, in whole or in part, against the weight of the evidence." New York Crim. Proc. L. § 470.15(5).

The Court of Appeals denied petitioner's request on February 25, 2013. SR 140. Petitioner did not seek *certiorari*, rendering the conviction final when the time for doing so expired on May 27, 2013. *See* U.S. Sup. Ct. R. 13(1). This in turn triggered the one-year statute of limitations for habeas corpus petitions set forth in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2244(d)(1)(A). *See Williams v. Artuz*, 237 F.3d 147, 151 (2d Cir. 2001) (one-year statute under AEDPA begins to run upon expiration of time to file a certiorari petition).

Petitioner timely filed the instant petition on February 20, 2014. On April 10, 2014, Your Honor referred the case to the Hon. Frank Maas, United States Magistrate Judge, for report and recommendation. (Dkt. No. 4.) By letter dated March 7, 2014 (Dkt. No. 2), petitioner requested stay and abeyance of his petition while he filed a motion in state court to vacate the judgment of conviction pursuant to N.Y. Crim. Proc. L. § 440.10. However, he did not identify any additional claims he wished to assert, nor otherwise explain the basis for his stay request.

By Order dated April 14, 2014 (Dkt. No. 5), Judge Maas noted that petitioner had already "exhausted his state court remedies" with respect to the two claims asserted in the petition. He then granted petitioner's stay request on the condition that petitioner meet the following requirements: (i) file a § 440.10 motion by May 26, 2014; (ii) provide the Court with a copy of the § 440.10 motion within ten days after filing it; (iii) file an amended petition incorporating any additional claims asserted in the § 440.10 motion within 30 days after fully exhausting his state court remedies for those claims; and (iv) provide the Court with a copy of any state court decisions on his § 440.10 motion within ten days after receiving them. *Id.* at 2.

Petitioner complied with the first two of these requirements. On May 23, 2014, petitioner filed his § 440.10 motion and supporting papers, in which he asserted three additional claims:

(i) that the government withheld video surveillance footage of the July 20, 2008 shooting incident in violation of petitioner's due process rights under *Brady v. Maryland*, 373 U.S. 83 (1963); (ii) ineffective assistance of trial counsel; and (iii) that prior to petitioner's trial, the government wrongfully provided a partial, rather than a complete, report related to a 911 call from a witness to the shooting in violation of New York State law. (Dkt. No. 6 at ECF pages 30-34.) On May 28, 2014, petitioner provided the Court with a copy of his § 440.10 motion and supporting papers. (Dkt. No. 7.)

On or about October 9, 2014, the New York County Supreme Court denied petitioner's § 440.10 motion. The Appellate Division denied petitioner's timely request for leave to appeal on March 12, 2015. (Dkt. No. 7, at 2 & Ex. A.) However, petitioner did not file an amended petition in this Court incorporating the additional claims asserted in his § 440.10 motion, as directed by the Court. Nor did he submit copies of the state court decisions denying his § 440.10 motion. He has not participated in this action in any way since providing the Court with a copy of his § 440.10 motion on May 28, 2014.

According to public records, petitioner was released on parole on May 22, 2015, and is no longer incarcerated. On February 18, 2016, respondent filed his opposition memorandum (Dkt. No. 10) and answer (Dkt. No. 11).[3] Petitioner did not reply and, as of the date of this Report, has not provided the Court with updated contact information.

In an Order dated November 11, 2015 (Dkt. No. 7), Judge Maas held that, since the deadline to file an amended petition asserting the three additional claims raised in petitioner's § 440.10 motion had "long since expired," all three additional claims "must be deemed

---

[3] Respondent served his papers by mailing them to petitioner at his GHCF address. *See* Ans. at 5; Opp. Mem. at 33. The record does not indicate whether those mailings were returned as undelivered.

abandoned." *Id.* at 2. "Accordingly, the only claims remaining in this proceeding are the two claims set forth in Winkfield's petition." *Id.* [4]

## DISCUSSION

### I.    Governing Legal Standards

Under 28 U.S.C. §§ 2244 and 2254, as amended by AEDPA, before the Court can address the merits of petitioner's constitutional claim, it must determine whether AEDPA's procedural requirements have been met. If there has been procedural compliance, the Court must analyze the claim under the appropriate standard of review in accordance with § 2254(d).

### A.    AEDPA's Procedural Requirements

#### 1.    Jurisdiction

"In order for a federal court to have jurisdiction over a habeas petition, the petitioner must be 'in custody pursuant to the judgment of a State court' at the time the petition is filed." *Nowakowski v. New York*, 835 F.3d 210, 215 (2d Cir. 2016) (quoting 28 U.S.C. § 2254(a)). "The 'in custody' language of § 2254(a) is jurisdictional and requires that habeas petitioners be in custody under a state conviction or sentence when they file for habeas relief." *Ogunwomoju v. United States*, 512 F.3d 69, 75 (2d Cir. 2008) (holding that a petitioner in immigration detention was not "in custody" for the purposes of establishing federal court jurisdiction to consider a habeas petition challenging a state court criminal conviction pursuant to 28 U.S.C. § 2254).

However, a petitioner's release from state custody does not generally moot a pending § 2254 habeas petition, because even after release the petitioner is still burdened with the collateral consequences of the criminal conviction. *See Sibron v. New York*, 392 U.S. 40, 51, 55

---

[4] The November 11, 2015 Order states, "Copies of this order are being mailed to the Attorney General's office *and to Winkfield at his last known address*" at GHCF. *Id.* (emphasis added). The record does not indicate whether any such mailing was returned as undelivered.

(1968) (The "mere release of the prisoner" does not "mechanically foreclose" a federal court's consideration of the merits of a habeas petition filed when petitioner was in state custody because "most criminal convictions do in fact entail adverse legal consequences."). As the Second Circuit explained in *Nowakowski*, 835 F.3d at 225, the *Sibron* presumption operates as follows: "[i]n the ordinary case, petitioners – and the court – may look to the consequences regularly appearing in this context: *e.g.,* future sentence enhancement, impeachment, or civil disabilities . . . including those that . . . are merely hypothetical and speculative." Respondent can rebut the presumption by showing that there is "'no possibility' of collateral consequences" arising from the challenged conviction in a particular case. *Id.* at 224, 225 (quoting *Sibron*, 392 U.S. at 57). *See also Cantoni v. Leclair*, 2015 WL 518226, at *2 (S.D.N.Y. Feb. 9, 2015) (citing *Perez v. Greiner*, 296 F.3d 123, 125 (2d Cir. 2002)) ("[I]n the absence of any evidence to the contrary, the Court presumes that Petitioner is subject to persisting collateral consequences from his challenged conviction, thereby maintaining a valid case or controversy as to his Petition."); *Garcia v. Woughter*, 2011 WL 5519899, at *1 (S.D.N.Y. Nov. 14, 2011) (Daniels, D.J.) (quoting *Sibron*, 392 U.S. at 57) (explaining that under *Sibron*, "after a petitioner's release from custody, a habeas petition is moot 'only if it is shown that there is no possibility that any collateral legal consequences will be imposed on the basis of the challenged conviction.'").

### 2. Statute of Limitations

The AEDPA imposes a one-year statute of limitations on habeas corpus petitions. As relevant here, a state prisoner has one year to file his petition after "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). Time that elapses while a properly-filed application is pending for state post-conviction or other collateral review with respect to the

pertinent judgment or claim is not counted toward the one-year limitation period. *Id.* § 2244(d)(2).

### 3.     Exhaustion

A federal court may not consider a petition for a writ of habeas corpus, even if timely filed, unless the petitioner has exhausted the remedies available in the state courts. 28 U.S.C. § 2254(b)(1). To satisfy the exhaustion requirement, the petitioner must "fairly present" each federal claim in "each appropriate state court (including a state supreme court with powers of discretionary review)" in a manner that "alert[s] that court to the federal nature of the claim." *Baldwin v. Reese,* 541 U.S. 27, 29 (2004) (internal quotations and citations omitted).

A petitioner may "fairly present" his claims in several ways, including by citing to the applicable provisions of the federal Constitution in his state-court appellate brief, *see Davis v. Strack*, 270 F.3d 111, 122-23 (2d Cir. 2001), or by citing "pertinent federal cases employing constitutional analysis." *Rustici v. Phillips*, 308 F. App'x 467, 469 (2d Cir. 2009) (internal quotation marks and citation omitted). However, a claim is not "fairly presented" to a state court "if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." *Baldwin*, 541 U.S. at 32. The federal claim must be presented with some specificity: "a general appeal to a constitutional guarantee as broad as due process" is insufficient "to present the 'substance' of such a claim to a state court." *Gray v. Netherland*, 518 U.S. 152, 163 (1996) (citing *Anderson v. Harless*, 459 U.S. 4, 7 (1982)).

"As a general matter, unexhausted claims must be dismissed without prejudice to afford the petitioner an opportunity to exhaust the claim in state court." *Rodriguez v. Sheaham*, 2016 WL 3522278, at *3 (S.D.N.Y. June 21, 2016) (citing *Carvajal v. Artus*, 633 F.3d 95, 104 (2d Cir.

2011)). However, "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2). In other words, a court "may deny but not grant" unexhausted claims on the merits. *See Caswell v. Racetti,* 2012 WL 1029457, at *4 (W.D.N.Y. Mar. 26, 2012) (citing *Turner v. Artuz,* 262 F.3d 118, 122 (2d Cir. 2001)).

When a petition contains both exhausted and unexhausted claims – a "mixed" petition – the court may stay the petition and hold it in abeyance while the petitioner returns to state court to exhaust. *Rhines v. Weber*, 544 U.S. 269, 277 (2005). However, abeyance is only appropriate where good cause exists for the failure to exhaust, where the unexhausted claims are not "plainly meritless," and where petitioner has not engaged in intentionally dilatory litigation tactics. *Id.* at 277-78. "[I]t is the petitioner who has the burden of demonstrating 'good cause' for his failure to exhaust previously any unexhausted claims." *Porter v. Keyser*, 2016 WL 1417847, at *2 (S.D.N.Y. Apr. 8, 2016) (citing *Perkins v. LaValley*, 2012 WL 1948773, at *1 (S.D.N.Y. May 30, 2012)).

### 4. Procedural Default

When a petitioner has failed to exhaust his claims in state court, but no longer has a procedural mechanism to do so – for example, because he failed to take the next step in state court before the applicable time limit expired – his claims are deemed unexhausted but "procedurally defaulted," barring federal habeas review. *Coleman v. Thompson*, 501 U.S. 722, 732 (1991); *see also Thomas v. Greiner*, 111 F. Supp. 2d 271, 277-78 (S.D.N.Y. 2000) (if this were not the rule, "the theory would be that state remedies are never exhausted because a petitioner can always request relief from the state court, even if it is virtually certain the state court would not grant it"); *Rodriguez v. Conway*, 2010 WL 92911, at *9 (E.D.N.Y. Jan. 6, 2010)

(collecting cases). The petition must be denied unless the petitioner can demonstrate "cause and prejudice," that is, "cause" for the procedural failure, coupled with prejudice as a result of the alleged constitutional violation, or, in the alternative, a fundamental miscarriage of justice, that is, that petitioner is actually innocent of the crime for which he was convicted. *See Beard*, 558 U.S. at 55; *Coleman*, 501 U.S. at 729-31; *Castille v. Peoples*, 489 U.S. 346, 350 (1989).

**B.      Standard of Review**

If the petitioner properly exhausted all of his federal claims in state court and if the last reasoned state court ruling decided his federal claims on the merits, those claims are reviewable in federal district court under AEDPA's deferential standard of review. That standard permits a district court to grant habeas relief only when the state court's opinion:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented by the State court proceedings.

28 U.S.C. § 2254(d).

"Clearly established" federal law means "the holdings, as opposed to the dicta," of the decisions of the United States Supreme Court "as of the time of the relevant state-court decision," and does not include opinions of lower federal appellate courts. *Green v. Travis*, 414 F.3d 288, 296 (2d Cir. 2005) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). A decision is "contrary to" clearly established federal law if the state court "arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413. A decision involves an "unreasonable application" of clearly established federal

law if the state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Id.*

This standard is intentionally difficult to meet. It preserves for federal courts "authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents," but "goes no further." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). A federal court cannot grant habeas relief "simply because the court concludes in its independent judgment that the relevant state-court decisions applied clearly established federal law erroneously or incorrectly. Rather, that application must be unreasonable." *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001) (quoting *Williams*, 529 U.S. at 411). Similarly, an adjudication of a claim is not based on an unreasonable determination of facts "merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010) (citation omitted).

## C.     Failure to Prosecute

Rule 41(b) of the Federal Rules of Civil Procedure authorizes district courts to dismiss an action "[i]f the plaintiff fails to prosecute or to comply with [the] rules or a court order."[5] Rule 41(b) dismissal is "a harsh remedy to be utilized only in extreme situations," *LeSane*, 239 F.3d at 209 (quoting *Theilmann v. Rutland Hospital, Inc.,* 455 F.2d 853, 855 (2d Cir. 1972) (per curiam)), and "*pro se* plaintiffs should be granted special leniency regarding procedural matters." *Id.* (quoting *Lucas v. Miles*, 84 F.3d 532, 535 (2d Cir. 1996)).

---

[5] Although Rule 41(b) expressly provides only for dismissals on motion, "it is unquestioned that Rule 41(b) also gives the district court authority to dismiss a plaintiff's case *sua sponte* for failure to prosecute." *LeSane v. Hall's Sec. Analyst, Inc.*, 239 F.3d 206, 209 (2d Cir. 2001) (citing *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630 (1962)).

"A district court considering a Rule 41(b) dismissal must weigh five factors: (1) the duration of the plaintiff's failure to comply with the court order, (2) whether plaintiff was on notice that failure to comply would result in dismissal, (3) whether the defendants are likely to be prejudiced by further delay in the proceedings, (4) a balancing of the court's interest in managing its docket with the plaintiff's interest in receiving a fair chance to be heard, and (5) whether the judge has adequately considered a sanction less drastic than dismissal." *Baptiste v. Sommers*, 768 F.3d 212, 216 (2d Cir. 2014) (internal citations and quotations omitted). "However, '[n]o one factor is dispositive,' and the ultimate decision of whether to dismiss should be made 'in light of the record as a whole.'" *Blake*, 2011 WL 7163172, at *2 (quoting *United States ex rel. Drake v. Norden., Inc.*, 375 F.3d 248, 254 (2d Cir. 2004)).

Courts in this district routinely dismiss *pro se* § 2254 habeas actions for failure to prosecute where, as here, the petitioner has failed to participate in the action or to meet his obligation to provide the Court with updated contact information after being released from custody. *See, e.g.*, *Abreu-Guzman v. Lempke*, 2011 WL 4862959, at *2 (S.D.N.Y. Oct. 13, 2011), *report and recommendation adopted*, No. 10-cv-6659 (S.D.N.Y. Feb. 1, 2012) (recommending dismissal of a *pro se* § 2254 petition for failure to prosecute pursuant to Fed. R. Civ. P. 41(b), noting "[c]ourts have repeatedly recognized that dismissal for failure to prosecute is appropriate where a plaintiff effectively disappears by failing to provide a current address at which he or she can be reached," and citing cases). However, they generally only do so after issuing one or more orders explicitly directing petitioner to communicate with the Court and warning that failure to do so may result in dismissal of the action. *See, e.g.*, *Beaman v. Yelich*, 2014 WL 1813926, at *1-2 (S.D.N.Y. May 6, 2014) (dismissing a *pro se* § 2254 petition for failure to prosecute pursuant

to Fed. R. Civ. P. 41(b) after "learning Petitioner had been released from custody" and issuing three orders over a four-month period to which petitioner did not respond).

## II.     Analysis

### A.     AEDPA's Procedural Requirements Have Been Satisfied

Winkfield filed his habeas petition within the one-year statute of limitations. At the time of filing, he was "in custody pursuant to the judgment of a State court," 28 U.S.C. § 2254(a), conferring subject matter jurisdiction on this Court to adjudicate the petition. Although no party has raised the issue of Winkfield's release from state custody, or addressed its effect on this proceeding, the presumption of "significant collateral consequences" clearly applies to petitioner's felony criminal convictions, which put him at risk for "future sentence enhancement, impeachment or civil disabilities." *Nowakowski*, 835 F.3d at 225. Respondent, who bears the burden "to prove by sufficient evidence that there is 'no possibility' such consequences will attach to his conviction," *id.* (citing *Sibron*, 392 U.S. at 57), has not addressed the issue at all. Thus, Winkfield's petition was not rendered moot by his release from DOC custody.

With respect to the two claims asserted in Winkfield's petition – which remain the "only claims" in this proceeding, *see* Order dated Nov. 11, 2015, at 2 – petitioner fully exhausted his state court remedies. *See, e.g., Strack*, 270 F.3d at 122-23 (claims were "fairly presented," and state court remedies were fully exhausted, where petitioner (i) submitted a brief to the Appellate Division on direct appeal that cited to a specific provision of the U.S. Constitution, and (ii) submitted a letter to the Court of Appeals asking that court to "consider and review all issues" outlined in his Appellate Division brief).

### B. The Petition Should Not Be Dismissed for Failure to Prosecute

Although petitioner has not participated in this proceeding since May of 2014, and has not met his obligation to provide the Court with updated contact information, I do not recommend dismissal for failure to prosecute under Fed. R. Civ. P. 41(b), primarily because it does not appear that petitioner, who is proceeding *pro se*, was ever explicitly notified that such conduct could result in dismissal of his habeas petition. Applying the remaining *Baptiste* factors for Rule 41(b) dismissal determinations, I find that although the duration of petitioner's failure to comply with Judge Maas' April 14, 2014 Order directing him to file an amended petition incorporating the claims asserted in his § 440.10 motion is substantial, it does not warrant dismissal because that Order did not state or suggest that petitioner's failure to comply could result in dismissal of the underlying petition. Moreover, if Your Honor agrees with my recommendation that the petition should be dismissed on the merits, any concerns about "further delay" in this proceedings and any resulting prejudice to respondent, and about the adequacy of petitioner's "chance to be heard," will be obviated. *See Baptiste*, 768 F.3d at 216. *Cf. Stanley v. Ercole*, 2015 WL 3883584, at *4 (E.D.N.Y. June 23, 2015) (lifting stay and dismissing § 2254 habeas petition pursuant to Fed. R. Civ. P. 41(b) where petitioner was released from custody, had not contacted the court in approximately three years, and had failed to respond to two court orders directing him to advise the court whether he intended to pursue the action).

### C. The Petition Should be Denied on the Merits

#### 1. Weight of the Evidence

Petitioner's first claim, which asserts that his "convictions were against the weight of the credible evidence," Pet. ¶ 9, is "a pure state law claim grounded in New York Criminal Procedure Law § 470.15(5)." *Correa v. Duncan,* 172 F. Supp. 2d 378, 381 (E.D.N.Y. 2001).

Accordingly, that claim is not cognizable in this habeas proceeding because this Court is authorized to grant relief with respect to claims adjudicated on the merits in state court proceedings *only* if the state court's adjudication of that claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established *Federal law*," or if the state court decision was "based on an unreasonable determination of the facts." 28 U.S.C. § 2254 (d)(1) (emphasis added). *See also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1999) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions[; i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."); *Lewis v. Jeffers,* 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law."); *Garrett v. Perlman*, 438 F. Supp. 2d 467, 470 (S.D.N.Y. 2006) (quoting *Douglas v. Portuondo,* 232 F. Supp. 2d 106, 116 (S.D.N.Y. 2002)) ("Unlike a sufficiency of the evidence claim, which is based upon federal due process principles, a weight of the evidence claim is 'an error of state law, for which habeas review is not available.'"); *McKinnon v. Superintendent, Great Meadow Corr. Facility*, 422 F. App'x 69, 75 (2d Cir. 2011) (citing *Correa*, 172 F. Supp. 2d at 381 and *Portuondo*, 232 F. Supp. 2d at 116) ("[T]he argument that a verdict is against the weight of the evidence states a claim under state law, which is not cognizable on habeas corpus.")

Respondent points out that petitioner "asserts solely that the verdict is against the weight of the evidence," and does not assert the "related" claim that the evidence was legally insufficient. Opp. Mem. at 18. Respondent further contends that even if this Court construes the petition to assert a legal insufficiency claim, that claim must be denied as "exhausted and procedurally defaulted." *Id.* at 19-21. Finally, respondent argues that even if the petitioner had

both asserted and exhausted a legal insufficiency claim, that claim would be meritless. *Id.* at 21-27. I agree.

Unlike the weight-of-the-evidence claim asserted by petitioner, a claim asserting that the evidence supporting the conviction "cannot be fairly characterized as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt," thereby denying petitioner due process of law, would state "a federal constitutional claim" and would therefore be cognizable in this habeas proceeding, "assuming that state remedies have been exhausted and that no independent and adequate state ground [stood] as a bar." *Jackson v. Virginia*, 443 U.S. 307, 321 (1979) (internal citations omitted). *See also Einaugler v. Supreme Court of State of N.Y.*, 109 F.3d 836, 839-40 (2d Cir. 1997) (quoting *Jackson*, 443 U.S. at 324) ("[A] state prisoner 'is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt.'")[6]

Petitioner did not assert a legal insufficiency claim in this proceeding, nor in his direct appeal in state court. *See* Pet. ¶¶ 9, 12 ("Appellant's convictions were against the weight of the credible evidence"); App. Br. at 24 (same). Further, the record is clear that he understood the difference between a weight-of-the-evidence-claim and a legal insufficiency claim. In the brief he submitted to the Appellate Division on direct appeal, petitioner set forth the "two distinct standards" that apply to legal insufficiency claims and weight-of-the-evidence claims,

---

[6] Legal insufficiency claims "face a high bar" because they are "subject to two layers of judicial deference" – the Appellate Division's deference to the jury's verdict and this Court's deference to the decision of the Appellate Division – and because "[u]nder *Jackson*, evidence is sufficient to support a conviction if, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Coleman v. Johnson*, 566 U.S. 650, 132 S. Ct. 2060, 2061, 2064 (2012) (per curiam) (quoting *Jackson*, 443 U.S. 307 at 319). "The only question under *Jackson* is whether [the jury's verdict] was so insupportable as to fall below the threshold of bare rationality.*" Id.* at 2065.

respectively, under New York law. *See* App. Br. at 26-28. He then explicitly asserted only a weight-of-the-evidence claim, implicitly acknowledging that the applicable standard is easier to meet. *See id.* at 29-35 (stating, "[a]pplying [the standards for sufficiency and weight-of-the-evidence claims] to the instant case, this Court must now reverse appellant's convictions as being against the weight of the credible evidence," and presenting arguments directed to the weight and credibility of the prosecution's evidence).[7]

Courts in this Circuit "liberally" construe "the grounds asserted" in *pro se* habeas petitions to "raise the strongest arguments that they suggest." *Howithi v. Travis*, 2008 WL 7728648, at *7 (S.D.N.Y. Sept. 16, 2008), *report and recommendation adopted,* 2010 WL 1685412 (S.D.N.Y. Apr. 23, 2010) (quoting *Diaz v. United States*, 517 F.3d 608, 612 (2d Cir. 2008), and citing cases). Here, however, petitioner's submissions "suggest" only that he intentionally did *not* raise a legal insufficiency claim. In addition, although a legal insufficiency

---

[7] Under New York Law, "the two standards of intermediate appellate review – legal sufficiency and weight of evidence – are related," but "each requires a discrete analysis." *Bleakley*, 69 N.Y.2d at 495. To decide whether a "jury verdict is supported by sufficient evidence, the court must determine whether there is any valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury on the basis of the evidence at trial and as a matter of law satisfy the proof and burden requirements for every element of the crime charged. If that is satisfied, the verdict will be upheld by the intermediate appellate court on that review basis." *Id.* (internal citation omitted). In contrast, New York courts apply a "two-step approach" for weight-of-the-evidence determinations. *People v. Romero*, 7 N.Y. 633, 643 (2006). First, they "determine whether, 'based on all the credible evidence[,] a different finding would not have been unreasonable." *Id.* (quoting *Bleakley*, N.Y.2d at 459). If a different conclusion would not have been "unreasonable," then "'the appellate court must, like the trier of fact below, weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony." *Id.* (quoting *Bleakley*, N.Y.2d at 459). The appellate court "'may set aside the verdict'" if it concludes that "'the trier of fact has failed to give the evidence the weight it should be accorded.'" *Id.* (quoting *Bleakley*, N.Y.2d at 459). The appellate court thus "sits as a thirteenth juror and decides which facts were proven at trial." *Danielson*, 9 N.Y. 3d at 348-49 (citing *Tibbs v. Florida*, 457 U.S. 31, 42 (1982)). "A legally sufficient verdict can be against the weight of the evidence." *Danielson*, 9 N.Y. 3d at 349 (internal citation omitted).

claim would be cognizable in this proceeding, it is not otherwise "strong[er]" than the weight-of-the-evidence claim actually asserted. Because petitioner did not present a legal insufficiency claim in his direct appeal in state court, that claim is both unexhausted and procedurally defaulted. Further, any such claim would be meritless. Reviewing the evidence presented against petitioner at trial on a weight-of-the-evidence assessment, the Appellate Division found "no basis" to "disturb[] the jury's determinations concerning identification and credibility." *Winkfield*, 98 A.D.3d at 923. Reviewing the evidence under the more stringent standard that applies on a legal insufficiency claim would likewise afford no basis for relief. *See Danielson*, 9 N.Y. 3d, at 349 ("A sufficiency inquiry requires the court to marshal competent facts most favorable to the People and determine whether, as a matter of law, a jury could logically conclude that the People sustained its burden of proof.").

### 2. *Molineux* Ruling

Like his weight-of-the-evidence claim, petitioner's claim that "the trial court violated [his] due process rights to a fair trial when it improperly reversed its original *Molineux* ruling," Pet. ¶¶ 9, 12, arises under state law. *See, e.g.*, *Sudler v. Griffin*, 2013 WL 4519768, at *3 (N.D.N.Y. Aug. 26, 2013) ("A decision to admit evidence of a defendant's uncharged crimes or other bad acts under [*Molineux*] constitutes an evidentiary ruling based on state law."). "[S]tate trial court evidentiary rulings generally are not a basis for habeas relief." *Vega v. Walsh*, 669 F.3d 123, 126 (2d Cir. 2012) (citing *Estelle*, 502 U.S. at 67-68).

To warrant habeas relief, "a claim asserting a right to relief on *Molineux* grounds must rise to the level of a constitutional violation." *Sierra v. Burge*, 2007 WL 4218926, at *5 (S.D.N.Y. Nov. 30, 2007) (citing *Roldan v. Artuz*, 78 F. Supp. 2d 260, 276-77 (S.D.N.Y. 2000)). *See also Zarvela v. Artuz*, 364 F.3d 415, 418 (2d Cir. 2004) (quoting *Rosario v. Kuhlman*, 839

F.2d 918, 925 (2d Cir. 1988)) ("Even erroneous evidentiary rulings warrant a writ of habeas corpus only where the petitioner 'can show that the error deprived [him] of a *fundamentally* fair trial.'") (emphasis in original).

In addition, the allegedly erroneous *Molineux* ruling must be "contrary to, or involve[] an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United State," 28 U.S.C. § 2254(d); that is, it must "arrive[] at a conclusion opposite to that reached by th[e] Court on a question of law or . . . decide[] a case differently than th[e] Court has on a set of materially indistinguishable facts." *Williams,* 529 U.S. at 412-13. *See also Evans v. Fischer*, 712 F.3d 125, 133 (2d Cir. 2013) (reversing district court decision granting a § 2254 petition where state court admitted evidence at petitioner's trial in violation of state-law evidence rules and explaining that to prevail, petitioner "must demonstrate that the effect of the admission [of the evidence] was so prejudicial to his defense that he was deprived of due process *and* he must identify a Supreme Court case that clearly establishes that the admission of [the challenged evidence] constitutes a violation of the Fourteenth Amendment.") (emphasis in original).

Respondent argues that a *Molineux* ruling cannot contravene "clearly established Federal law" for the purposes of a habeas petition because "[w]hether a *Molineux* ruling can ever violate due process has been explicitly left undecided by the Supreme Court." Opp. Mem. at 27 (quoting *Gonzalez v. Martuscello*, 2011 WL 2600657, at *5 (W.D.N.Y. June 29, 2011)). Courts in this Circuit agree:

> [T]he issue of whether an admission of uncharged crimes can ever constitute a violation of the Due Process Clause has not been decided by the Supreme Court . . . Given that the Supreme Court has not held that the use of uncharged crimes would violate the Due Process Clause, the Appellate Division's rejection of this claim is hardly either contrary to or an unreasonable application of clearly established Supreme Court law. Consequently, I cannot find a due process violation because to do so would amount to the

> creation of a new rule of constitutional law, which a federal court is not permitted to do in a habeas corpus proceeding.

*Jones v. Conway*, 442 F. Supp. 2d 113, 131 (S.D.N.Y. 2006) (citing *Estelle*, 502 U.S. at 75 n.5). *See also Lleshi v. LaClair*, 2017 WL 1319798, at *11 (S.D.N.Y. Jan. 26, 2017), *report and recommendation adopted*, 2017 WL 1319927 (S.D.N.Y. Apr. 7, 2017) (same); *Johnson v. Greiner*, 56 F. App'x 38, 39-40 (2d Cir. 2003) (summary order) (quoting *Estelle*, 502 U.S. at 75 n.5) (Petitioner "points to no established Supreme Court precedent on whether, and in what circumstances (if any), evidence of propensity may violate due process . . . [and] the Supreme Court [has] specifically expressed 'no opinion on whether a state law would violate the Due Process Clause if it permitted the use of prior crimes evidence to show propensity to commit a charged crime.'")

In addition, petitioner has not demonstrated that the trial judge's *Molineux* ruling admitting Ms. Richardson's testimony was error, let alone "error [that] deprived [him] of a *fundamentally* fair trial." *Rosario*, 839 F.2d at 925 (quoting *Taylor v. Curry*, 708 F.2d 886, 891 (2d Cir. 1983) (emphasis in original). The trial court concluded that Ms. Richardson's testimony was properly admitted as a matter of state law, and the Appellate Division agreed, finding that the testimony was "relevant to establish identity" and that the probative value of that testimony "outweighed any prejudicial effect." *Winkfield*, 98 A.D.3d at 923.

Nothing in the record suggests that these decisions were incorrect, much less that they were "contrary to, or involved an unreasonable application of" federal law, 18 U.S.C. 28 U.S.C. § 2254(d). This Court "will not independently determine the appropriateness of whether or not that evidence should have been admitted under New York State evidentiary rules." *Allaway v. McGinnis*, 301 F. Supp. 2d 297, 300 (S.D.N.Y. 2004) (rejecting habeas petitioner's claim that evidence of his prior bad acts was improperly admitted at his trial in New York state court). *See*

*also Estelle*, 502 U.S. at 67-68 ("[W]e reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.") (internal citations omitted).

## CONCLUSION

For the foregoing reasons, I respectfully recommend that the District Judge DENY the petition. The Clerk of Court is respectfully directed to mail a copy of this Order to petitioner.

Dated: New York, New York
      September 18, 2017

**SO ORDERED**.

_____
**BARBARA MOSES**
**United States Magistrate Judge**

## NOTICE OF PROCEDURE FOR FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

The parties shall have fourteen days from the service of this report and recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. *See also* Fed. R. Civ. P. 6(a), (d). A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Any such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the Hon. George B. Daniels at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl St., New York, New York 10007, and to the chambers of the undersigned Magistrate Judge. Any request for an extension of time to file objections must be directed to Judge Daniels. Failure to file timely objections will preclude appellate review. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).